IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

NANCY CAVE,

Plaintiff,

vs.   CIVIL No: L02CV825

THE WINDEREMERE GROUP, INC.

Defendant.

## PLAINTIFF'S ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES AND PRODUCTION OF DOCUMENT REQUESTS

**NOW COMES** Plaintiff Nancy Cave and responds to Interrogatories and Requests for Production of Documents Propounded by Defendant pursuant to the Federal Rules of Civil Procedure:

**INTERROGATORY NO.1:** Identify all persons having personal knowledge of the facts complained of in your Complaint and/or Second Amended Complaint, summarize the facts of which each has knowledge and state the relationship, if any, of these persons to you or to each other, and specify the interrogatory or interrogatories to which each person contributed.

**RESPONSE:**

Amy Smith - can testify to the fact that she was on overhead for 10 - 12 mos. Never received their profit sharing when they quit, along with other employees. Worked in Largo facility until clearances were completed.

Rita Baker - sat on overhead with me and was aware that I was sent home and how I had to make copies of contract files and fill in for Linda Lynn as executive assistant to Samuel David Warman. She quit also.

Linda Morris - co-worker from CIA that was a Windermere employee, before I took the offer with Windermere. She was also placed on overhead after her position expired and she quit. Never received their profit sharing when they quit, along with other employees.

**INTERROGATORY NO.2:** Describe in detail all facts upon which you base your allegation that you were subjected to discriminatory conduct regarding your race as set forth in your Complaint and/or Second Amended Complaint, including but not limited to any and all evidence tending to show similarly situated non-black individuals who were not terminated because their security clearances were not facilitated, which you state will raise an inference of discriminatory animus; and identify all persons that you believe have knowledge or information about the facts supporting this allegation.

**RESPONSE:** I was told by Robert George during my interview, that I would remain on overhead until my clearances crossed over. He also went to say, "Just ask Amy Smith and Jackie Zimmerman." They were on overhead for nearly a year, if not a year. Both of these females are white. I ask both ladies whether or not it was true that they were on overhead that long and they both confirmed Mr. George statement. They also went to say that they worked out of a Largo facility to separate very small parts into containers. I live less than 1 mile from this facility. Phyllis Hughes approached me, a Windermere Program Manager at the Largo facility, and she said if I ever wanted to come work on a unclassified site for her, let her know because she had a Systems Administrator positions coming available in Largo office. She had mentioned that to me because we had bumped into each other at the hairdresser and spoke. That following Monday we were surprised to see each other at Windermere not knowing that we both worked for them and that's when she mentioned the SA position.

**INTERROGATORY NO.3:** Describe in detail all facts upon which you base your allegation that you resigned from your position with the Central Intelligence Agency ("CIA") based upon Defendant's alleged assertion that it would facilitate the transfer of your security clearances.

**RESPONSE:** Once I accepted the offer from Windermere I gave CIA 3.5 weeks notice of resignation. The week prior to me leaving, I was sent my Background Investigation (BI) paperwork. I completed the application and sent back to CIA security ASAP. I notified Susan Bursinski of the BI update that same day and she said it wasn't a problem and Windermere would complete what CIA didn't do and that my BI was good until 9/01. It would only take 6 weeks to cross over and they would redo my BI.

**INTERROGATORY NO.4:** Describe in detail all facts upon which you base your allegation that in April 2001, Defendant asserted that it would facilitate the transfer of your security clearances.

**RESPONSE:** I told Bernard Bigelow and he told me to call Susan Bursinski. That's when she reassured me that it would be taken care of.

**INTERROGATORY NO.5:** Describe in detail all facts upon which you base your allegation that Defendant's Security Manager made statements known to be false or in reckless indifference to the truth when she allegedly gave assurances to you that Defendant would transfer your security clearances in a timely manner and that it was "taken care of" by Defendant's officials, including but not limited to the name of the Security Manager, the date upon which you allege that such as comment was made, and the identity of any witnesses to the alleged statement.

**RESPONSE:** I relied upon Susan Bursinski statement because she is the Security Manager, representing Windermere. I went to CIA security to verify my clearance and they gave me the following dates: Background Investigation 4/24/01, Polygraph 2/5/98, Top Secret 4/10/02.

**INTERROGATORY NO.6:** Describe in detail all facts upon which you base your allegation that you relied on the statements made by Defendant's Security Manager and did not pursue any other means to ensure the continuation of your security clearances.

**RESPONSE:** Once sent home on PT-ON-CALL-ADMIN-LV-w/o-PAY on 8/01. I contacted Joan Velar at CIA Employment Verification and Andrew East, Chief/OTC Security. I was told that there had been no request of my employee records or security clearances. I just needed my sponsor (Windermere via NSA) to request my file.

**INTERROGATORY NO.7:** Describe in detail all facts upon which you base your allegation that your security clearance was revoked because of Defendant's failure to transfer such security clearances in a timely manner.

**RESPONSE:** I have applied for several federal contracting positions and have received offers and have even worked for BAE. I was told by BAE someone was holding my file, and I sent me home at the end of the week. I have had a job with Northrop and Grumman, CSC, ADI, ATS, and Verizon, but I was told the same thing. Other positions I have applied I was told I was over qualified and or they think I was fired and don't want to verify my employment because they are intimidated by the name CIA.

**INTERROGATORY NO.8:** Describe in detail all facts upon which you base your allegation that you have been unable to secure subsequent employment as set forth in your Complaint and/or Second Amended Complaint.

**RESPONSE:** I interviewed with Robert George and he reassured me of the position and he had prayer with me. Mr. George is also Rev. George at St. John Freewill Baptist Church as an Assistant Pastor or Sons of the church. I received the offer letter and I wanted to change the monetary offer, so I called and spoke with Linda Lynn. Mrs. Lynn told me to make the changes, and then sign and return. Bernard Bigelow reassured me of the stability and loyalty Windermere has with their employees. Then I was instructed by Bernard Bigelow to contact Susan Bursinski and she said they would just cross over in 6 - 8 weeks.

**INTERROGATORY NO.9**: Describe in detail all facts upon which you base your allegation that Defendant owed you a duty when it allegedly assured you during your pre-employment negotiations that it would facilitate the transfer of your security clearances upon your resignation from your employment with the CIA.

**RESPONSE**: I contacted CIA to re-verify my clearances and if anyone had requested my employee file and clearances. The answer was still no. I then called NSA Security, Kim Maddox and she NSA was holding my file because they were waiting on Windermere, Susan Bursinski to contact them in reference to the paperwork. Susan had me listed as a CCA and not a Single Track and NSA needed the proper paperwork submitted.

**INTERROGATORY NO. 10**: Describe in detail all facts upon which you base your allegation that Defendant breached a duty to you when it allegedly failed to promptly facilitate the transfer as set forth in your Complaint and/or Second Amended Complaint.

**RESPONSE**: Windermere knew I had 16 years of service with CIA and I had job stability. Robert George reassured me, and Susan Bursinski that this would be a smooth transition, which would only took 6-8 weeks to complete.

**INTERROGATORY NO. 11**: Describe in detail all facts upon which you base your allegation that Defendant allegedly knew that you would rely upon the assertions set forth in your Complaint and/or Second Amended Complaint when you resigned your employment with the CIA.

**RESPONSE**: I have not been able to be gainful employed, because they think that I was fired from CIA because who in their right mind would resign after 16 years of employment to go contract and be sent home as well. "Are you sure they (Windermere or CIA) didn't fire you?" I have no health coverage for my children or myself. I recently went to social services to apply for a Medicaid care for my children. I am still pending my medical assistant approval. My house is in foreclosure and I don't expect to be her much longer. And my car has been reposed, but my father helped me retrieve my car back. The only source of income I have is child support when that comes in.

**INTERROGATORY NO. 12**: Describe in detail all facts upon which you base your allegation that there is a proximate cause and injury to you and your family solely due to Defendant's alleged breach of a duty owed to you.

**RESPONSE**: I was told by Andrew East at CVIA that I only needed sponsorship, because no one has requested my file and that's the only way I could have my clearances reactivated.

**INTERROGATORY NO. 13**: Describe in detail all facts upon which you base your allegation that you cannot become re-employed in the intelligence community until Defendant sponsors you by facilitating your applications for clearance.

RESPONSE: My car was reposessed on my birthday (12/23/02) and my father assisted me in retrieving my car back after the holiday. My house is presently in foreclosure and it was placed on auction 2/13/03. The bank brought it back and they are now trying to sell the property. I have no health insurance or 401K plan for retirement. I can't afford to pay for my doctor's visit up front or even be billed. I am struggling to keep my eldest child in college, because I have to pay a promissory note of $200.00 per month for her.

**INTERROGATORY NO. 14:** Describe in detail all facts upon which you base your allegation that you have sustained dire financial consequences and detriment to your career solely as a result of Defendant's alleged breach of a duty.

RESPONSE: Previously answered.

**INTERROGATORY NO. 15:** Please identify each document not previously identified that you claim may support the allegations contained in your Complaint and/or Second Amended

Complaint, including the name or title of the document, the author of the document, the general subject matter of the document, where a copy of the document is located, and the bates stamp number(s) if the document is being produced in response to Defendant's Request for Production of Documents.

RESPONSE: Lost wages, mental anguish and suffering, lost benefits, letter of reference and attorney fees.

**INTERROGATORY NO. 16:** Please itemize and fully describe each and every element of damages which you seek to recover in this lawsuit.

RESPONSE: I have had spiritual counseling from my pastor Rev. Freddie Davis and Rev. Connie Gore. I've had special prayer with Bishop Blunt and Sister B. Johnson because of the emotional and financial distress I have endured. I have even gone to my church to get help with paying my mortgage on several occasions.

**INTERROGATORY NO. 17:** Describe in detail all facts which support your allegation as set forth in your prayer for relief regarding any emotional distress you claim to have suffered.

RESPONSE: Lost wages itself is $60,000.00 per year and it has been 18 months since I have had any income from working. I have no benefits or retirement saved in a 401K plan because I am unemployed. I also have outstanding attorney fees and I am currently behind on other debts, due to unemployment.

**INTERROGATORY NO. 18:** Describe in detail the manner by which you calculated

compensatory damages in excess of $50,000, including, but not limited to, how the amount was calculated, what documents were relied upon to calculate the amount, the person calculating the amount, and the method of calculating the amount.

**RESPONSE:** Previously answered.

**INTERROGATORY NO. 19:** Describe in detail the manner by which you calculated punitive damages in the amount of $1,250,000.00, including, but (not limited to, how the amount was calculated, what documents were relied upon to calculate the amount, the person calculating the amount, and the method of calculating the amount.

**RESPONSE:** Previously answered.

**INTERROGATORY NO. 20:** Describe in detail the manner by which you calculated damages in the amount of $50,000 for lost wages, humiliation, and embarrassment you claim in accordance with Maryland law, including, but not limited to, how the amount was calculated, what documents were relied upon to calculate the amount, the person calculating the amount, and the method of calculating the amount.

**RESPONSE:** Previously answered.

**INTERROGATORY NO. 21:** Describe in detail the manner by which you calculated punitive damages in the amount of $250,000 you claim in accordance with Maryland law, including, but not limited to, how the amount was calculated, what documents were relied upon to calculate the amount, the person calculating the amount, and the method of calculating the amount.

**RESPONSE:** Previously answered.

**INTERROGATORY NO. 22:** Identify each person that you expect to call as an expert witness at trial, and for each such expert, state the subject matter on which the expert is expected to testify, state the substance of the facts and opinions to which the expert is expected to testify, summarize the grounds for each opinion, and identify (or, in the alternative, attach copies of) all documents provided to the expert and all reports including draft reports received from the expert.

**RESPONSE:** Not applicable.

**INTERROGATORY NO. 23:** Identify each person that you expect to call as a fact witness at trial, and for each such witness, state the subject matter on which the witness is expected to testify, state the substance of the facts to which the witness is expected to testify and identify (or, in the alternative, attach copies of) all documents provided to or received from the witness.

**RESPONSE:** Previously answered.

**INTERROGATORY NO. 24:** Describe in detail any complaints ever made by you to any person concerning any alleged discrimination of any type involving you or anyone else, during your employment with Defendant.

**RESPONSE:** I was never told that there were any complaints or discrimination.

**INTERROGATORY NO. 25:** Describe in detail any complaints ever made by you to any employer by whom you were employed prior to, and/or subsequent to, your employment with Defendant concerning any alleged discrimination of any type of you or anyone else.

**RESPONSE:** I told Samuel Warman about Beth from HR asking me very rudely to get off the company phone and that I wasn't allowed to use the company phone He told me that she was just jealous because the ISG section got paid the most out of all of Windermere. He went on to say he couldn't stand that fat red head bitch and just use his phone because there were no public phone on the site and that everybody else use the phone for personal use. Linda Lynn told me, that Beth and others in HR try to complain about her as well, but Samuel Warman wouldn't have it. Linda told me not to worry about it or take it personally because that's just the way they act.

**INTERROGATORY NO. 26:** Describe in detail any and all filings for bankruptcy, including such information as the date of any such filing, the jurisdiction in which it was filed, the status of such filing and whether the bankruptcy has been discharged.

**RESPONSE:** not applicable.

_Nancy R. Cave_   4/7/03
Nancy Cave, Plaintiff        Date